MEMORIAL HERMANN HEALTH-CARE SYSTEM d/b/a Memorial Hermann Southwest Hospital and Dominic Gregory Sreshta, M.D., Appellants

v.

Vincent BURRELL a/n/f of Katie Whitfield, Appellee.

No. 14–05–01028–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 2007.

Kyle Wayne Farrar, Catherine B. Smith, Patrick Mason Dennis, Patrick W. Mizell, Ren Patrick Rigby, Jr., Houston, for appellant.

Kevin Philip Parker, W. Mark Lanier, Judson Andrew Waltman, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

This is an interlocutory appeal in a health care liability case. Appellee Vincent Burrell, as next friend of Katie Whitefield, sued appellants, Memorial Hermann Healthcare System and Dr. Dominic Gregory Sreshta, for medical malpractice. In two issues, appellants challenge the trial court's denial of their objection to appellee's expert witness report and motion to dismiss under section 74.351 of the Texas Civil Practices and Remedies Code. We affirm.

### Factual and Procedural Background

On November 19, 2002, Katie Whitfield, an obese woman suffering from Alzheimer's, was brought to the Memorial Hermann Southwest Hospital emergency room and admitted to the hospital. While in the hospital, she was treated by Dr. Dominic Sreshta. Whitfield was discharged from the hospital on November 25. Whitfield alleges she developed decubitus ulcers (bedsores) in her sacral area because of substandard care received at the hospital.

After filing suit, appellee filed an expert report by Dr. Thomas Winters pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. Appellants filed a motion to dismiss for failure to comply with section 74.351. The trial court denied appellants' motion and found Dr. Winters qualified to provide an expert report in this case. In its order, the trial court ruled, alternatively, "that [appellee] has made an objective good faith effort to comply with the definition of an expert report as required by relevant statute such that this

Court would grant an extension for [appellee] to comply with the statute if it found or if a reviewing Court were to find that Dr. Winters' report does not comply with the statute." Appellants filed this interlocutory appeal pursuant to section 51.014(a)(9) of the Texas Civil Practice and Remedies Code.

### Discussion

#### I. Issues Presented

Appellants present two issues on appeal: (1) whether appellee's expert is qualified to file an expert report under section 74.351 of the Texas Civil Practices and Remedies Code; and (2) if not, whether appellee is entitled to an extension of time to cure the expert report.

#### II. Standard of Review

■ We review a trial court's determination that an expert is qualified under an abuse of discretion standard. *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex.App.—Houston [14th Dist.] 2005, pet. filed). Appellee, as the proponent of the expert, has the burden to show that the expert is qualified and the expert report satisfies the statutory requirements. *See Olveda v. Sepulveda*, 141 S.W.3d 679, 682–83 (Tex.App.—San Antonio 2004, pet. denied). The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.2004). We may not reverse a trial court's discretionary ruling simply because we might have decided it differently. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003) (construing former statute).

#### III. Is Dr. Winters Qualified As An Expert?

■ In appellants' first issue, they contend appellee failed to comply with section

74.351 of the Texas Civil Practice and Remedies Code because (1) Dr. Winters is not qualified as an expert under section 74.402, and (2) Dr. Winters is not qualified to testify about causation under Rule 702 of the Texas Rules of Evidence.

### A. What evidence may this court consider when determining if a party complied with Section 74.351?

Before addressing the merits of appellants' argument that Dr. Winters is not qualified as an expert, we must determine what evidence we may consider in our analysis. In support of their argument, appellants refer us to excerpts from Dr. Winters' depositions in other cases, the affidavit of Dr. Vartian, and standards promulgated by the Infectious Diseases Society of America. However, our analysis of the qualifications of an expert under section 74.351 is limited to the four corners of the expert's report and curriculum vitae. *See Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001) (holding issue of compliance of an expert report with the substantive requirements of former article 4590i is determined on the basis of information contained within the four corners of the report); *Randalls Food & Drugs, L.P. v. Kocurek,* No. 14–05–01184–CV, 2006 WL 2771872, at *2–3 (Tex.App.—Houston [14th Dist.] Sept. 28, 2006, no pet.) (mem op.) (applying four corners rule in determining the qualifications of an expert under section 74.351); *Fontenot Enter., Inc. v. Kronick,* No. 14–05–01256–CV, 2006 WL 2827415, at *4 (Tex.App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem op.) (applying four corners rule in determining the qualifications of an expert under section 74.351). Therefore, we consider only Dr. Winters' report and curriculum vitae to determine whether he is qualified as an expert under section 74.351. (We have attached a complete copy of Dr. Winters' expert report as an appendix to this opinion.)

### B. Section 74.402

■ Appellants contend Dr. Winters is not qualified as an expert under the requirements set forth in section 74.402 of the Texas Civil Practice and Remedies Code. An expert providing opinion testimony regarding whether a health care provider departed from the accepted standards of health care must satisfy the requirements set forth in section 74.402. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B) (Vernon Supp.2005). Section 74.402 provides:

(b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (Vernon 2005). In determining whether a witness is qualified "on the basis of training or experience," the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(1)-(2).

Appellants specifically challenge Dr. Winters' qualifications under sections 74.402(b)(2) and (b)(3). Appellants first argue Dr. Winters' expert report does not set forth his experience; rather, the report contains only conclusory statements that he is "familiar" or has "experience" with the prevention and treatment of decubitus ulcers. See *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel*, No. 04–05–00500–CV, 2005 WL 3445994, at *2–3 (Tex. App.—San Antonio Dec. 14, 2005, pet. denied) (mem. op.) (holding doctor was not qualified under section 74.402 where expert report failed to state how the doctor's experience on a peer review committee and as an administrative director constituted training or experience which qualified him to opine about the standard of care at issue); *In re Windisch*, 138 S.W.3d 507, 513–14 & n. 11 (Tex.App.—Amarillo 2004, orig. proceeding) (holding conclusory statements referencing an expert's qualifications are insufficient to show the expert is qualified on the particular subject matter at hand when the expert report only tracks the language of the statute and does not bridge the gap between his experience and the medical procedure at issue). Contrary to appellants' contention, Dr. Winters' expert report provides the following description of his experience with decubitus ulcers: "I am familiar with the standard of care as it pertains to prevention and treatment of decubitus ulcers. I have experience in instructing nurses and other personnel in the proper techniques to prevent

decubitus ulcers and I have treated patients with decubitus ulcers over the course of my practice as an infectious disease internist and occupational doctor." Dr. Winters' report provides that he has completed a fellowship and practiced for more than twenty-five years in the field of infectious disease. In his curriculum vitae, Dr. Winters indicates he has been board certified in occupational medicine since 1992 and board eligible in infectious disease since 1977. We reject appellants' argument that Dr. Winters' expert report is conclusory and fails to set forth his experience.

Appellants also argue Dr. Winters' expert report does not show his requisite knowledge of decubitus ulcers. They first cite *Forrest v. Danielson*, 77 S.W.3d 842, 848 (Tex.App.—Tyler 2002, no pet.), a case in which the Tyler court of appeals held that a medical doctor was not qualified to render an expert opinion because the doctor's expert's report did not demonstrate experience with the medical procedure at issue or familiarity with the applicable standard of care. The proffered expert in *Forrest* was an orthopedic surgeon, and the procedure at issue was spinal surgery. *Id.* at 846–47. The expert did not link his experience as an orthopedic surgeon to the patient's spinal surgery, and his expert report consisted of a one page letter describing the patient's medical history and opining that surgery was unnecessary. *Id.* Appellants next cite *Tomasi v. Liao*, 63 S.W.3d 62, 65 (Tex.App.—San Antonio 2001, no pet.), in which a medical doctor specializing in psychiatry submitted an expert report regarding a patient's post-operative care following neurosurgery. The San Antonio court of appeals rejected the expert's report because his only link to the illness at issue was his service on a peer review committee and his status as a diplomat of the American Board of Psychiatry and Neurology. *Id.* at 66. The doctor did

not adequately link his experience on the peer review committee with the medical treatment at issue by describing his committee or diplomat service or why it was relevant. *Id.; see also In re Samonte,* 163 S.W.3d 229, 237–38 (Tex.App.—El Paso 2005, orig. proceeding) (holding proffered expert was not qualified because his expert report did not describe his qualifications or experience in the field of medicine at issue). Unlike the experts in the cases cited by appellants, Dr. Winters does link his experience in his medical specialities (internal medicine, occupational medicine, and infectious disease) to decubitus ulcers by stating in his report that, over the course of his career in each of these three specialities, he has treated patients with decubitus ulcers and trained nurses and other personnel in the proper techniques to prevent decubitus ulcers.

Under section 74.402(b)(2), appellee must demonstrate that Dr. Winters has knowledge of the accepted standards of care for the diagnosis, care, or treatment of Ms. Whitfield's injury or condition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(2). In his expert report, Dr. Winters states that he is familiar with the standard of care as it pertains to the prevention and treatment of decubitus ulcers. Dr. Winters' expert report contains a section titled "Standard of Care," which provides clear, fact-based explanations of the standards of care applicable to both Memorial Hermann Southwest Hospital and Dr. Sreshta. As it pertains to Memorial Hermann Southwest Hospital, Dr. Winters states that the standard of care requires the use of pressure reducing mattresses, repositioning of the patient every two hours, and impeccable skin care in order to prevent the formation of decubitus ulcers. As it pertains to Dr. Sreshta, Dr. Winters states that the standard of care requires timely and appropriate interventions to medically treat decubitus ulcers; specifically, upon being informed of a brown,

necrotic ulcer with odor, the standard of care requires prompt medical evaluation along with a CBC, culture of the ulcer, and antibiotic treatment. Accordingly, Dr. Winters' expert report satisfies the requirements of section 74.402(b)(2). *See Group v. Vicento,* 164 S.W.3d 724, 734 (Tex.App.—Houston [14th Dist.] 2005, pet. filed) (holding a doctor's statement that he has knowledge of the accepted standard of care for the injury or illness at issue satisfies section 74.402(b)(2)).

Under section 74.402(b)(3), appellee must demonstrate Dr. Winters is qualified on the basis of training or experience to offer an expert opinion regarding the accepted standards of health care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(3). To determine whether Dr. Winters is qualified under section 74.402(b)(3), we consider whether Dr. Winters is (1) certified by a licensing agency or has substantial training or experience relevant to the claim, and (2) whether he is actively practicing health care relevant to the claim. *See id.* § 74.402(c)(1)-(2).

Regarding the first prong of 74.402(c), appellants argue Dr. Winters is not board certified in infectious diseases. A plain reading of the statute does not disqualify Dr. Winters because he lacks board certification. *See id.* § 74.402(c)(1). Dr. Winters may also be qualified under section 74.402(c)(1) if he has substantial training or experience in an area of health care relevant to the claim. *Id.* Thus, we must decide whether, over the more than twenty-five years of practicing medicine, Dr. Winters has obtained substantial training or experience relevant to the prevention and treatment of decubitus ulcers. In his report, Dr. Winters explains he has trained personnel on the prevention and treatment of decubitus ulcers and treated patients with decubitus ulcers over the course of his practice as a doctor of inter-

nal medicine, occupational medicine, and infectious disease. We know from his curriculum vitae that Dr. Winters is board eligible in infectious disease, a fellow in infectious disease, and has relevant teaching experience (Primary Care Practice Teaching, Medical Ward Attending, Attending Infectious Disease Service, and Occupational Medicine Clinic Attending). Based on information about his past and present experience relevant to infectious diseases, and particularly decubitus ulcers, we conclude Dr. Winters has substantial training or experience in an area of health care relevant to appellee's claim. Therefore, Dr. Winters is qualified under section 74.402(c)(1).

Regarding the second prong of section 74.402(c), appellants contend Dr. Winters is not actively practicing health care in an area relevant to appellee's claim. Appellants argue that because Dr. Winters currently practices occupational medicine, he is not qualified to render an opinion about the diagnosis and treatment of decubitus ulcers. Appellants cite a sampling of cases in which occupational doctors testified about exposure to hazardous chemicals,

lead, or silica dust, or an individual's ability to return to work after injury.[1] Appellants argue that Dr. Winters, as a doctor of occupational medicine, would be qualified as an expert only on similar topics. Appellants' argument is unpersuasive.[2] The cases cited by appellants do not hold that a doctor practicing occupational medicine cannot testify about decubitus ulcers. Moreover, our analysis is not based on the types of cases in which occupational doctors have testified or even whether Dr. Winters is in the same field of practice as appellants; rather, our analysis under section 74.402(c)(2) focuses on the issue of whether Dr. Winters is actively practicing health care in rendering health care services relevant to decubitus ulcers. *See id.* § 74.402(c)(2).

Section 74.402 broadly defines "practicing health care" as including "(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider." *Id.* § 74.402(a)(1)-

---

**1.** *See Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 174 (Tex.2004) (occupational physician testifying about injury from exposure to silica dust); *Exxon v. Makofski,* 116 S.W.3d 176, 189 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (occupational physician used as an expert on benzene exposure); *Daniels v. Lyondell-Citgo Refining Co., Ltd.,* 99 S.W.3d 722, 726 (Tex.App.—Houston [1st Dist.] 2003, no pet.) (evaluating an occupational physician's ability to testify about benzene exposure); *Twin City Fire Ins. Co. v. Grimes,* 724 S.W.2d 956, 958 (Tex.App.—Tyler 1987, writ ref'd n.r.e.) (occupational physician used as an expert in a case about exposure to lead on the job site); *Detar Hosp., Inc. v. Estrada,* 694 S.W.2d 359, 363 (Tex.App.—Corpus Christi 1985, no writ) (ability to return to work after injury).

**2.** In *Cresthaven Nursing Residence v. Freeman,* 134 S.W.3d 214, 233–34 (Tex.App.—Amarillo

2003, no pet.), the court held a doctor practicing occupational medicine was qualified to give expert testimony regarding a nursing home patient who suffered from a urinary tract infection. In reaching its conclusion, the court evaluated the doctor's experience with the particular condition at issue. *See id.* at 233. The doctor was not precluded from testifying about the urinary infection and the patient's cause of death simply because he practiced occupational medicine at the time. *Id.* at 233–34. The court found the expert qualified because the standards of care he described applied to any physician who treated patients with the same illness or injury. *See id.* In this case, Dr. Winters states in his expert report that since becoming an doctor of occupational medicine, he has treated patients suffering from decubitus ulcers and trained others on their prevention.

(2). In his expert report, Dr. Winters states that he has treated patients with decubitus ulcers in his practice as an occupational doctor. Dr. Winter's curriculum vitae indicates he is currently employed as medical director of occupational and environmental health at both Quincy Hospital and Milton Hospital. He is the current chief of occupational medicine at New England Baptist Hospital, and the medical director of occupational and employee health for Cape Cod Health Care Systems. Dr. Winters is also currently training health care providers in the field of occupational and environmental health in his capacity as a guest lecturer at the Harvard School of Public Health. Based on Dr. Winters' expert report and curriculum vitae, we conclude that Dr. Winters is actively practicing health care in rendering health care services relevant to appellee's claim. *See id.* § 74.402(c)(2). Accordingly, appellee has satisfied the requirements of 74.402(b)(3).

We hold the trial court did not abuse its discretion in determining that Dr. Winters' expert report and curriculum vitae satisfy the requirements of sections 74.402(b)(2) and (b)(3).

### C. Texas Rule of Evidence 702

██ Appellants next argue Dr. Winters is not qualified to render an expert opinion on the issue of causation because he does not have sufficient expertise in the prevention and treatment of decubitus ulcers. Section 74.351(r)(5)(C) of the Texas Civil Practice and Remedies Code requires "a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim" to be qualified under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C). Texas Rule of Evidence 702 states: "If scientific, technical, or other specialized knowledge will assist the

trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The trial court makes the initial determination about whether the expert and the proffered testimony meet these requirements. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). The trial court has broad discretion to determine admissibility, and we will reverse only if there is a clear abuse of discretion shown. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718–19 (Tex. 1998).

██ There are no definitive guidelines for determining whether a witness's education, experience, skill, or training qualify him as an expert. *State v. Northborough Ctr., Inc.,* 987 S.W.2d 187, 193 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). The party offering the witness as an expert must establish that the witness is qualified to testify under Rule 702 by demonstrating the witness has expertise concerning the actual subject matter about which the party is offering an opinion. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 498 (Tex.2001); *Broders,* 924 S.W.2d at 153.

Dr. Winters is board certified in internal medicine and occupational medicine. He has twenty-five years of experience as a medical doctor, including direct experience in treating patients with decubitus ulcers and instructing nurses and other personnel in the proper techniques to prevent decubitus ulcers. Based on Dr. Winters' education, training, and experience, as set forth in his expert report and curriculum vitae, we conclude that Dr. Winters satisfies the requirements of Rule 702 and is qualified to render an expert opinion on causation in this case pursuant to section

74.351(r)(5)(C). We overrule appellants' argument pertaining to Rule 702.

Appellants' first issue is overruled.

## IV. Extension of Time

In their second issue, appellants contend appellee should not be entitled to an extension of time because filing a deficient expert report is the equivalent of filing no report at all. Because we affirm the judgment of the trial court denying appellants' motion to dismiss, find appellee's expert qualified, and his expert report satisfies all requisite criteria, we need not reach appellants' second issue. *See* TEX. R. APP. P. 47.1.

### CONCLUSION

We overrule appellants' first issue and hold the trial court did not abuse its discretion in finding Dr. Winters qualified to provide an expert report in this case. We do not consider appellants' second issue as to whether appellee is entitled to an extension of time to cure the allegedly deficient expert report. We affirm the judgment of the trial court.

### APPENDIX

Thomas H. Winters M.D. Inc.

P.O. Box 269

Stow, MA 01775

FAX (978) 562-0163

December 16, 2004

My name is Thomas H. Winters, M.D. and I am Chief of the Care Group for Occupational Health Network. I completed a fellowship in infectious disease and have practiced for over 25 years in infectious disease. I am a frequent speaker at various regional and national medical conferences and have been a consultant for the Massachusetts Department of Health. I have reviewed various medical records concerning Katie Whitfield and I am familiar with the standard of care as it pertains to prevention and treatment of decubitus ulcers. I have experience in instructing nurses and other personnel in the proper techniques to prevent decubitus ulcers and I have treated patients with decubitus ulcers over the course of my practice as an infectious disease, internist and occupational doctor.

### BACKGROUND

On 11/19/02 Katie Whitfield, a 76 year old demented female, was admitted to Dr. Sreshta from the Emergency Department at Memorial Hermann Southwest for a UTI, fever, and incidental chest-pain. There is no note of skin decubitus problem on the emergency department physical exam. The nurse note from the emergency department states that the skin is normal. Her skin was normal on admission by physician during the physical exam. On 11/20/02, the nurse assessment states "no breakdown" with a line drawn through the words "no breakdown." The word "error" is written above the words "no breakdown." The note continues "and then Stage One sacral breakdown, no discharge found." On 11/21/02 nursing at Memorial Hermann Southwest applied a Duoderm to the sacral decubitus. In the nursing assessment there was no comment about integument. On 11/22/02 the notes indicate that the Duoderm was applied to Stage 2 decubitus. On 11/23/02, the notes indicate a Stage One decubitus ulcer. On 11/25/02 the notes indicate wet dressing to sacral decubitus two times a day with a temperature of 101 on admission and 98-99 on discharge. Ms. Whitfield was then discharged to Nations Home Health Care.

Nations Home Health Care noted the following information on the dates indicated:

1) 11/28/02—Buttocks wound, odor less foul, early granulation. No skin or subcutaneous infection.

2) 12/02/02—Wound red, serosanguinous drainage. Drainage saturated 80% of dressing. No foul odor present. Necrotic brown tissues at center of wound 4 × 4 cm.

3) 12/04/02—Wound bed red/brown necrotic center 4 × 4 irregular edges, slightly foul odor, early granulation at edges of wound, MD notified of wound status, no new orders.

4) 12/06/02—Brown ; necrotic, tissues center, wound healing, no odor. Wet/dry. On call medical doctor aware of status.

5) 12/07/02 Dressing changed.

6) 12/09/02 Brown necrotic ulcer (+) odor. Medical doctor notified of wound status. No new orders.

7) 12/12/02—Vital signs stable. Coccyx wound with brown necrotic tissues. Grey fibrous tissues under necrotic site, sanguinous/purulent drainage, foul odor, decreased caregiver independent for daily wound care. Instructed in MD orders to bring patient to office, unable to comply. Patient greater than 250 lbs, bed bound with Alzheimer's. Needs ambulance to transport. MD notified of wound status. Pt to be seen in office.

8) 12/16/02—Temperature 98, 107/69, buttock wound with necrotic tissues, 375%, gray fibrous tissues visible under necrotic tissue, foul odor, serosanguinous drainage. Appointment made 12/19/02.

Ms. Whitfield was then admitted to Triumph Hospital on 12/18/02 with Stage 3–4 decubitus ulcer and necrotic tissues. The physical exam showed a temperature of 98, pulse of 112, a pulse rate of 20 and a 8 by 6 cm necrotic sacral ulcer. The assessment was a Stage 4 decubitus ulcer with a plan of IV antibiotics and a plastic surgery consultant for debridement. Later, on 1/09/03 there was excision of the sacral pressure sore with ostectomy and glutteal flap closure. The discharge summary indicates that Dr. Altavrin did daily debridement of the wound. Ms. Whitfield was discharged home to VNA and followed by VNA from 2/21/03 through 7/17/03.

STANDARD OF CARE

As it pertains to Memorial Hermann Southwest Hospital, the standard of care requires that a patient be repositioned every two hours, or more frequently, in order to prevent formation of deubitus ulcers. The standard of care also require that other interventions be taken to protect against formation of decubitus ulcers, including pressure reducing mattresses and impeccable skin care.

As it pertains to Dr. Sreshta, the standard of care requires that he take timely and appropriate interventions to medically treat the decubitus ulcer. Specifically, on 12/09/02 when Dr. Sreshta was informed of a brown, necrotic ulcer with odor the standard of care required prompt medical evaluation along with a CBC, culture of the ulcer and antibiotic treatment. Further, on 12/12/02, Dr. Sreshta was aware of progression of the wound and was required to take, at least, the medical intervention listed above. Finally, on 12/16/02, as a result of Ms. Whitfield's condition noted above, the standard of care would have been for Dr. Sreshta to send her to the emergency room for evaluation and treatment.

BREACH OF THE STANDARD OF CARE

As documented in the Memorial Hermann Southwest Hospital medical records, on 11/19/02 when Katie Whitfield presented to the ER, her skin was intact and she had no decubitus. The standard of care was breached by the medical and nursing staff's failure to reposition Ms. Whitfield frequently enough to prevent formation of a decubitus ulcer. Further, family mem-

bers of Ms. Whitfield also report that they found her lying in dried feces, which is a breach of the standard as far as skin care is concerned in that stool (bacteria), along with fragile, aged skin, and direct ischemic pressure all contribute to skin breakdown and entry of infectious disease. Thus, the standard of care was breached by the nursing staff at Memorial Hermann Southwest Hospital by failing to reposition Ms. Whitfield appropriately, failing to provide a pressure reducing mattress in a timely manner, and by failing to provide adequate skin hygiene and care. In addition, while she was in the ER, Ms. Whitfield was kept on a hard mattress and was not repositioned a single time. All of these deviation from the standard of care caused the development of a decubitus ulcer in Ms. Whitfield.

Dr. Sreshta breached the standard of care on 12/09/02 when he was informed of a brown necrotic ulcer with odor and failed to provide prompt medical evaluation which should have included a CBC, culture of the wound, and antibiotic treatment. Dr. Sreshta breached the standard of care in the same manner on 12/12/02 when he was informed of progression of the wound but failed to take the actions which he should have taken on 12/09/02. Finally, on 12/16/02, Dr. Sreshta breached the standard of care when the wound revealed 75% of the lesion as necrotic and he failed to provide acute diagnostic or therapeutic intervention, including failing to send her to the ER for evaluation and treatment.

CAUSATION

As stated above, the decubitus ulcer in Ms. Whitfield developed as a result of direct ischemic pressure, a wet environment (stool and urine) and her fragile skin. If proper skin care and pressure prevention is employed most decubitus ulcers can be avoided altogether. Memorial Hermann Southwest Hospital nursing negligence, outlined above, resulted in ischemic pressure and caused the development of the decubitus ulcer. Had proper precautions been taken and the standard of care complied with, it is probable that the decubitus ulcer could have been avoided in Ms. Whitfield.

After the ulcer developed, Dr. Sreshta's negligence, also outlined above, caused a significant worsening of the ulcer. Had Dr. Sreshta complied with the standard of care the ulcer could have been treated earlier and likely would not have progressed to the point it did.

DAMAGES

It is my opinion based on a reasonable medical probability that more likely than not, Ms. Whitfield would have been spared three months of rehabilitation, hospital care, and plastic surgery if the reasonable standards of care applicable to Memorial Hermann Southwest Hospital and Dr. Sreshta had been complied with.

Sincerely,

/s/ Thomas H. Winters, MD
Thomas H. Winters, MD
Diplomat Occupational and Environmental Health
Diplomat Internal Medicine
Board Eligible Infectious Disease