In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-044 CV


____________________



CHRISTUS HEALTH SOUTHEAST TEXAS d/b/a CHRISTUS ST. MARY


HOSPITAL, DUBUIS HEALTH SYSTEM, INC. d/b/a DUBUIS HOSPITAL OF


PORT ARTHUR, AND SREEDHAR POLAVARAPU, Appellants



V.



PRESTON BROUSSARD, INDIVIDUALLY AND a/n/f OF DOROTHY


BROUSSARD, DECEASED AND a/n/f OF CODY BROUSSARD, Appellee


 




On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-179,564 






OPINION



 In this accelerated appeal, Christus Health Southeast Texas d/b/a Christus St. Mary
Hospital ("St. Mary"), Dubuis Health System, Inc. d/b/a Dubuis Hospital of Port Arthur
("Dubuis"), and Sreedhar Polavarapu, M.D. ("Polavarapu") challenge the trial court's orders
denying their motions to dismiss the health care liability claim of Preston Broussard,
individually and as next friend of Dorothy Broussard, Deceased and as next friend of Cody
Broussard. (1) See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2008). We
hold that the expert report is deficient. Accordingly, we reverse the trial court's orders and
remand the case to the trial court for further proceedings.

 As a preliminary matter, we consider Broussard's claim that Polavarapu failed to
timely perfect his appeal. In an accelerated appeal, the notice of appeal must be filed within
twenty days of the date on which the order is signed. Tex. R. App. P. 26.1(b). The trial court
denied Polavarapu's motion to dismiss on January 17, 2008. The trial court denied the
motions to dismiss filed by Dubuis and St. Mary on the same day. Dubuis and St. Mary filed
notice of appeal on February 1, 2008, within twenty days of the signing of the orders. Thus,
Dubuis and St. Mary timely filed a notice of appeal in the case. Although the trial court
denied the motions with separate signatures, all notices of appeal filed in the same case must
be given the same docket number. See Tex. R. App. P. 12.2(c). Polavarapu contends the
notice of appeal he filed on February 7, 2008, is timely pursuant to Texas Rule of Appellate
Procedure 26.1(d) because it was filed within fourteen days after the first timely notice of
appeal was filed. See Tex. R. App. P. 26.1(d). Even if we assume that Polavarapu could not
rely on the notice of appeal filed by a party appealing a separately signed order, Polavarapu
nevertheless filed his notice of appeal within the time for which an extension may be granted. 
See Tex. R. App. P. 26.3. An extension motion is necessarily implied if a notice of appeal
is filed within fifteen days after it was due. Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex.
1997). A party's mistaken belief that no extension was required because the notice of appeal
was timely reasonably explains the failure to file a motion for an extension of time. Hone
v. Hanafin, 104 S.W.3d 884, 886-87 (Tex. 2003). Without deciding whether a single
appellate timetable applied to the appeals of Polavarapu, Dubuis and St. Mary, we imply a
motion for an extension to file a notice of appeal, accept Polavarapu's explanation as 
reasonable, and grant the extension. Accordingly, Polavarapu timely perfected appeal.

 Broussard's petition alleges that while Dorothy was awaiting discharge from a long
term care facility under the control of Dubuis or St. Mary, the appellants removed Dorothy's
finger pulse oximeter. Dorothy dislodged her breathing tube and suffered a hypoxic brain
injury that allegedly resulted in her death. Broussard alleges the appellants prematurely
ordered Dorothy's discharge and failed to safely monitor and restrain her. Broussard served
the appellants with a copy of an expert report and curriculum vitae of Jon D. Peters, a board-
certified neurologist. The single report serves with respect to both liability and causation
issues as to all three defendants.

 Polavarapu challenges the expert's qualifications to render an opinion on the care
provided by an internal medicine physician. To provide an expert opinion regarding whether
a physician departed from accepted standards of medical care, the expert must have
knowledge of the accepted standard of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim and must be qualified on the basis of
training or experience to offer an expert opinion regarding those accepted standards of
medical care. Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(2), (3) (Vernon 2005).

 In his affidavit, Peters identifies himself as a board-certified neurologist currently in
private practice in Reston, Virginia. Peters states that his report is based on his review of the
medical records and "20 years of experience as a board certified Neurologist who practices
in the same medical discipline as those medical service providers who rendered neurological
services to Mrs. Broussard." Peters explains his qualifications to render an expert opinion
in this case, as follows:

 I am familiar with the standard of care for a Neurologist, which is a
branch of medicine specializing in the diagnosis, care and treatment of the
Nervous System. In my career to date, I have taken care of and treated
numerous people with neurological problems such as Mrs. Broussard, and am
familiar with the consequences arising out of a lack of oxygen reaching the
brain. I am familiar with the facts of this case from my review of the medical
records provided to date. My opinions expressed herein are based on my
education, training, clinical experience as [a] Neurologist caring for patients
in the same or similar situation as Dorothy Inez Broussard, and review of the
medical records produced to date.


 Peters does not practice in the same specialty as does Polavarapu. Peters says that he
is familiar with the standard of care for a neurologist, but Polavarapu is an internal medicine
physician. A physician expert need not be a specialist in the defendant's particular area of
practice if the subject matter of the claim is common to and equally recognized and
developed in more than one field of practice, and the expert is qualified in one of those fields. 
Blan v. Ali, 7 S.W.3d 741, 746-47 (Tex. App.--Houston [14th Dist.] 1999, no pet.). 
According to Peters's report, Dorothy was being treated for pneumonia and acute respiratory
deficiency, not a neurological disorder. Peters does not state that he is familiar with the
standard of care for an internal medicine physician treating intubated patients for pneumonia
and acute respiratory deficiency, nor does he state that the treatment of such patients is
common to both neurology and internal medicine. Peters states that he has treated patients
with Dorothy's neurological condition, but he does not state that Polavarapu was treating
Dorothy for a neurological condition. Thus, Peters does not explain how he is qualified to
express an opinion on the standard of care set forth elsewhere in his report. Accordingly, the
trial court abused its discretion in overruling Polavarapu's objections to Peters's report.

 St. Mary and Dubuis objected to Peters's report and challenge the expert's
qualifications to render an opinion on the standard of care applicable to St. Mary and Dubuis. 
St. Mary and Dubuis also argue the expert's affidavit is deficient because Peters fails to
distinguish St. Mary from Dubuis.

 Broussard challenges our jurisdiction over the appeal by St. Mary and Dubuis. He
argues that Section 74.402(b) applies to an "individual" defendant health care provider and
claims a hospital cannot appeal because it is not an individual. Broussard misconstrues the
applicable statutes. Section 74.402 concerns the qualifications for an expert witness;
subsection (b) adds an additional requirement if the defendant is an individual, but nothing
in Section 74.402 limits an appeal taken pursuant to Section 51.014(a)(9) to defendants who
are individuals. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008); 
Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b) (Vernon 2005). Broussard contends St.
Mary and Dubuis departed from the accepted standards of administrative services directly
related to health care. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005). 
Thus, Broussard is asserting a health care liability claim. See id. St. Mary's and Dubuis's
objections to Broussard's expert report invoked Section 74.351(b) of the Civil Practice and
Remedies Code; accordingly, we have jurisdiction over their appeal from the denial of their 
motion to dismiss. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp.
2008); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9).

 To express an expert opinion on liability as to St. Mary and Dubuis, Peters must have
knowledge of accepted standards of care for health care providers for the diagnosis, care, or
treatment of the illness, injury, or condition involved in the claim and be qualified on the
basis of training or experience to offer an expert opinion regarding those accepted standards
of health care. Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b) (Vernon 2005). To
determine whether Peters is qualified on the basis of training and experience, the court must
consider whether he is certified by a licensing agency or has other substantial training or
experience in the area of health care relevant to the claim, and whether he is actively
practicing health care in rendering health care services relevant to the claim. Tex. Civ. Prac.
& Rem. Code Ann. § 74.402(c) (Vernon 2005).

 Relying on Memorial Hermann Healthcare System v. Burrell, Broussard argues that
Peters need only show that he actively practices health care in an area relevant to the
treatment of patients with fluctuating mental status. In Burrell, the report at issue stated that
the doctor offering the opinion was familiar with the standard of care to prevent and treat
decubitus ulcers and had experience instructing nurses in the proper preventative techniques. 
Memorial Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 759 (Tex. App.--Houston
[14th Dist.] 2007, no pet.). The appellate court held the expert adequately linked his
experience to the treatment of decubitus ulcers by the nursing staff. Id. at 761. Here,
however, Broussard specifically limited the claim against St. Mary and Dubuis to what
Broussard characterized as an "administrative decision" to prematurely discharge Dorothy. 
Peters does not explain how his experience with treating patients with fluctuating mental
status gives him expertise regarding a hospital's "administrative decision" about the
circumstances under which a hospital can disregard a doctor's discharge order.

 In response to the motion to dismiss, Broussard argues that "[t]his lawsuit does not
concern itself with the acts of the nursing staff. Rather, it concerns the administrative
decisions of the Defendant Hospital which caused the premature death of [Dorothy]."
Broussard argues that Peters need not practice in the same field as St. Mary and Dubuis so
long as he has knowledge of the accepted standards of care for the claim involved in the
lawsuit. According to Broussard, "[t]he injury claimed in this lawsuit deals with a series of
negligent administrative decisions" beginning with the "premature decision to discharge Mrs.
Broussard from the long term care facility located on the third floor of the Defendant
Hospital" which "led to the wrongful decision to remove a finger light device attached to
Mrs. Broussard's index finger" and "as a result of the decision to discharge Mrs. Broussard,
she was ordered not to be physically restrained." Because Dorothy "had a history of
fluctuating mental capacities" the "failure to safely monitor and restrain Mrs. Broussard left
her unobserved and unattended by the Defendants when Mrs. Broussard knocked the
breathing tube out of her trachea."

 To offer his expert opinion on the standard of care applicable to the health care
facilities, Peters's expertise must be evident from the four corners of his report and
curriculum vitae. See generally Am. Transitional Care Ctrs. of Tex. v. Palacios, 46 S.W.3d
873, 878 (Tex. 2001). Peters's report and curriculum vitae explain that he has active staff
privileges at Reston Hospital, where he sits on the credentials committee, and that he is on
the utilization review subcommittee for the neurology section of Fairfax Hospital. As
Broussard argued in his response to the motion to dismiss, "this case concerns the Defendant
Hospital's decision to abandon Mrs. Broussard, not whether the nursing staff followed
protocol." The report does not state that Peters is familiar with hospital administration or the
standards to be applied to implementing an attending physician's discharge order. The fact
that Peters is on staff at a hospital and serves on that hospital's credentials committee does
not establish that he possesses specialized knowledge of the protocols, policies, or procedures
a hospital of ordinary prudence would have had in place in determining when a facility
should disregard a discharge order. See Reed v. Granbury Hosp. Corp., 117 S.W.3d 404, 409
(Tex. App.--Fort Worth 2003, no pet.).

 Peters's report and curriculum vitae do not explain how Peters's committee
assignments and experience on staff at Reston Hospital make him familiar with the standards
applied by hospitals under these circumstances. Thus, the trial court abused its discretion in
overruling St. Mary's and Dubuis's objections to Peters's report.

Conclusion


 The trial court erred in overruling the objections to the expert report served by
Broussard and in denying the motions to dismiss Broussard's health care liability claims
against Polavarapu, St. Mary, and Dubuis. When an appellate court reverses the trial court's
denial of a motion to dismiss a health care liability claim due to deficiencies in the elements

of the report, the appellate court may remand the case to the trial court to consider granting
a thirty-day extension to cure the deficiencies in the report. Leland v. Brandal, 51 Tex. Sup.
Ct. J. 1046, 2008 WL 2404958, *3-4 (Tex. June 13, 2008); see also Lewis v. Funderburk,
253 S.W.3d 204, 208 (Tex. 2008) (A deficiency in any requirement of Section 74.351 may
be cured by amending an expert report or by serving a report from a separate expert.). On
remand, the trial court may consider whether to grant an extension of time to cure the
deficiencies in the expert report.

 We reverse the trial court's orders and remand the case to the trial court for further
proceedings consistent with this opinion.

 REVERSED AND REMANDED.




 _____________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on June 26, 2008

Opinion Delivered September 11, 2008


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Broussard's petition does not explain how he has standing to bring a wrongful death
and survivor claim or how he is acting "as next friend" of a deceased person. His capacity
to pursue a claim on behalf of the Estate of Dorothy Broussard was not explained in the
petition, and both St. Mary and Dubuis filed a verified denial of Preston Broussard's
capacity. The expert report discussed infra states that Dorothy was a seventy-year-old
married woman. The petition alleges Cody Broussard is Dorothy's ten-year-old son and that
Preston Broussard is acting as Cody's next friend, but does not identify Preston's relationship
to either Dorothy or Cody.