Affirmed and Memorandum Opinion filed August 25, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00052-CV

____________

 

NEXION HEALTH AT HUMBLE, INC.,

d/b/a HUMBLE HEALTHCARE CENTER, Appellant

 

V.

 

CAROLYN WHITLEY; CLIFTON KELLY; DIDDIE BLANC; 

BILLIE RAY KELLY; and JUDY WILLIAMS, Representative of
the 

ESTATE OF JEANETTE BLANC, Deceased, Appellees

 



 

On Appeal from the 11th District Court

Harris County,
Texas

Trial Court Cause
No. 2008-17287

 



 

M E M O R
A N D U M   O P I N I O N

This is
an accelerated appeal by Nexion Health at Humble, Inc. d/b/a Humble Healthcare
Center (hereinafter AHHC@) from the denial of a motion to dismiss in a healthcare
liability suit.  HHC raises three issues concerning the denial of the
motion and the failure to award attorney=s fees and costs.  We affirm.

 

This
appeal arises from a suit for damages, based on allegations of negligence
against two nursing facilities.[1] 
Jeanette Blanc was a non-ambulatory patient at a nursing home, when an employee
allegedly dropped her while giving her a bath.  This fall caused a
fracture of Blanc=s hip.  After surgery for the broken hip, Blanc was
moved to HHC=s facility.  Soon thereafter, an employee at HHC=s facility loaded Blanc into a van
for transport to a doctor=s appointment.  Because Blanc was not properly secured
in the vehicle, she was thrown out of her wheelchair and hit the floor of the
van, resulting in facial contusions, swelling, nose lacerations and abrasions,
as well as swelling to both knees and shins.  After treatment for these
injuries, Blanc returned to HHC=s facility.  A short time later, Blanc died. 
According to the coroner, Blanc died from A[c]omplications of blunt force injury
with left hip fracture@.

Because
this is a healthcare liability claim, it is governed by Chapter 74 of the Texas
Civil Practice and Remedies Code, which requires the claimant to furnish an
expert report within 120 days after suit is filed.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a) (Vernon Supp. 2008).  Appellees attached an
expert report to their original petition.  This report was prepared by
David P. Wright, M.D.  The two healthcare defendants objected to the
expert report on a number of grounds.  The defendants moved to dismiss for
failure to comply with Chapter 74.  The parties reached a Rule 11
agreement that plaintiff would provide an amended report.  After the
amended expert report was filed, the defendants filed a second motion to
dismiss for failure to comply with Chapter 74.  The trial court denied
this motion and HHC filed this appeal. 

 

Appellees,
as proponents of the expert, had the burden to show Dr. Wright was qualified
and that his report satisfied the statutory requirements.  Memorial
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.CHouston [14th Dist.] 2007, no
pet.).  We review a trial court=s decision concerning the adequacy of
an expert report under an abuse‑of‑discretion standard.  See
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873,
875 (Tex. 2001) (construing former statute).  We apply the same standard
to a trial court's determination that an expert is qualified.  See Broders
v. Heise, 924 S.W.2d 148, 151‑52 (Tex. 1996).  A trial court
abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to any guiding rules or principles.  Bowie Mem'l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002).  We may not reverse a trial
court's discretionary ruling simply because we might have decided it
differently.  See Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003) (construing former statute).  The trial court, however, has no
discretion in determining what the law is or applying the law to the facts;
therefore, a trial court's failure to apply or analyze the law correctly is an
abuse of discretion.  Sanjar v. Turner, 252 S.W.3d 460, 463‑64
(Tex. App.CHouston [14th Dist.] 2008, no pet.).

HHC
claims the trial court abused its discretion in denying the motion to dismiss
because Dr. Wright=s report does not establish his qualifications to render an
opinion on standards of care in a nursing home.  The qualifications for an
expert in a healthcare liability case are set out in section 74.402, which
defines what constitutes Apracticing health care.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.402 (Vernon 2005).  According to this section, Apracticing health care@ includes:

(1)
training health care providers in the same field as the defendant health care
provider at an accredited educational institution; or

(2) serving
as a consulting health care provider and being licensed, certified, or
registered in the same field as the defendant health care
provider.     

Id. at ' 74.402(a)(1)-(2).  This section
further provides that a person may qualify as an expert on the issue of whether
the healthcare provider departed from the accepted standard of care only if
that person:

(1) is
practicing health care in a field of practice that involves the same type of
care or treatment as that delivered by the defendant health care provider, if
the defendant health care provider is an individual, at the time the testimony
is given or was practicing that type of health care at the time the claim
arose;

 

(2) has knowledge of accepted standards of care for
health care providers for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; and

(3) is qualified on the basis of training or
experience to offer an expert opinion regarding those accepted standards of
health care.

 

Id. at 74.402(b)(1)-(3).  In deciding whether a witness is
qualified on the basis of training or experience, the court shall consider
whether the witness is certified in the health care area relevant to the claim
and is actively rendering health care services relevant to the claim.  Id.
at 74.402(c).  

In support of its argument, HHC cites
to two courts of appeals cases, Simonson v. Keppard, 225 S.W.3d 868
(Tex. App.CDallas 2007, no pet.) and Jones v. Ark-La_Tex Visiting Nurses, Inc.,
128 S.W.3d 393 (Tex. App.CTexarkana 2004, no pet.), regarding the qualifications to
testify on the standard of care in a nursing home.  In Simonson, the
plaintiff came to the emergency room with symptoms of headache, nausea and
vomiting, and was seen by a nurse practitioner who diagnosed a migraine. 
225 S.W.3d at 870.  The next day, the plaintiff died from a massive
intracranial hemorrhage.  Id.  The healthcare facility
objected to plaintiff=s expert report, but the trial court denied the motion to
dismiss.  Id. at 870-71.  The appellate court found the expert
did not satisfy the statutory qualifications statute because nowhere in his
affidavit did the doctor state he had knowledge of the standard of care
applicable to nurse practitioners or that he had worked with or supervised
nurse practitioners.  Id. at 872.  

In Jones, the plaintiff
claimed a home healthcare worker was negligent in insertion and monitoring of
an IV needle, resulting in right arm nerve injury.  128 S.W.3d at
395.  The expert=s report showed his experience and education, but did not
explain how this experience qualified him to give the standard of care for
nurses monitoring a patient in a home healthcare setting, or that he was an
expert on appropriate nursing care.  Id. at 397.  

 

HHC
complains that Dr. Wright did not show he was qualified to testify about the
standard of nursing care for transportation of patients by nursing homes. 
Unlike the experts in Simonson and Jones, the expert in this case
did state he had experience with nursing home patients and was familiar with
the appropriate standard of care.  Appellee=s expert, Dr. David Wright, stated in
his report that he was board certified in Family Medicine, he has a clinical
practice, and is a full time faculty member of several educational programs,
including the University of Texas Medical Branch.  He stated he has
supervised, taught, and worked alongside nurses and certified nurse
assistants.  Additionally, he stated he has cared for hundreds of patients
in nursing homes and is Awell versed in the standard of medical care that is to be
provided to a nursing home patient.@  Finally, Dr. Wright stated he
had assisted in drafting and implementing policies and procedures for
healthcare facilities. 

In his
report, Dr. Wright described his professional education, training and
experience relevant to a nurse=s standard of care while providing care for a nursing home
patient.  Specifically, Dr. Wright asserted that he supervised nurses and
assistants, cared for hundreds of nursing home patients, is well-versed in the
standard of care to be provided to a nursing home patient, and procedures and
policies for nursing homes. The trial court could have found that Dr. Wright=s experience in caring for nursing
home patients and his knowledge of the standard of medical care to be provide
to nursing home patients included the care to be provided when a nursing home
patient is transported.  We find no abuse of discretion by the trial court
in denying the motion to dismiss on this basis.

 

HHC next
argues that Dr. Wright is not qualified to render an expert report because his
report failed to show he is actively practicing nursing home health care during
the relevant time period.  Dr. Wright=s report and curriculum vitae
indicate that he practices and is board certified in family medicine, that he
has cared for hundreds of patients in nursing homes throughout his twenty-five
year career, that he has been appointed to the Board of Directors of Hospice of
Austin, and acts as a consultant to the Austin Hospice Program.  Caring
for nursing home patients and consulting for a nursing home facility is
sufficient to constitute practicing nursing home health care.  There is no
merit to this complaint.

HHC also
claims the trial court abused its discretion in denying the motion to dismiss
because Dr. Wright=s report does not establish the causal relationship between
the alleged negligence and Blanc=s death.  Section 74.351 defines
an expert report as Aa written report by an expert that provides a fair summary of
the expert=s opinions as of the date of the report regarding applicable standards of
care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed.@  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(6) (Vernon Supp. 2008).  

In his
report, Dr. Wright stated that HHC=s staff failed to properly restrain
or supervise Blanc, resulting in her being thrown face first to the floor of
the van, and that this blunt force trauma contributed with a high degree of
medical certainty to Blanc=s neurological and cognitive function, contributing to her
overall health and demise.  HHC argues this does not show how the alleged
blunt force trauma impaired Blanc=s neurological and cognitive
functions or how this impairment caused her death.  In support of this,
HHC cites to Bowie Memorial Hospital v. Wright, 79 S.W.3d 48 (Tex.
2002).  

In Wright,
the supreme court held that an expert report must express the causal
relationship in terms of reasonable medical probability and must summarize the
causal relationship between the facility=s failure to meet the applicable
standard of care and Blanc=s injury.  Id. at 53.  In Wright, the
court found the expert report lacked information linking the expert=s conclusion to the alleged
breach.  Id.  See also Davis v. Spring Branch Med. Ctr., Inc.,
171 S.W.3d 400, 410 (Tex. App.BHouston [14th Dist.] 2005, no pet.)(found no causal link
between conclusory statements in expert report that failure to follow doctor
orders regarding tube feeding, weighing of patient, and check of gastric tube
position robbed plaintiff of quality of life and hastened loss of her legs).

 

Here,
Dr. Wright did link the alleged breach (the failure to properly supervise and
restrain Blanc in the vehicle) to the injury (the lacerations, contusions,
neurological and cognitive insult contributing to her overall ill health and
demise).  Thus, the trial court could have determined the report did
establish a causal relationship between the alleged breach of the applicable
standard of care and the injury.  As Dr. Wright=s opinion explains, the fall from the
wheelchair caused lacerations and contusions, but may have also causes
cognitive and neurological complications that hastened her death.  This is
sufficient to establish a causal link between the breach of the standard of
care and the injury.

Finally,
HHC asserts the trial court abused its discretion in failing to award HHC its
attorney=s fees and costs.  Chapter 74
provides for recovery of attorney=s fees and costs if the plaintiff
fails to furnish an expert report in compliance with Chapter 74.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(b)(1) (Vernon Supp.
2008).  Because we have upheld the trial court=s denial of the motion to dismiss,
HHC has not shown its entitlement to attorney=s fees and costs.   

Accordingly,
we affirm the judgment of the trial court. 

 

PER CURIAM

 

 

Panel consists of Chief Justice Hedges, and Justices
Seymore and Sullivan.  

 














[1]  Only one healthcare facility has appealed the
trial court=s ruling.