COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-325-CV

 

 

SHANNON POLONE, P.A.-C. AND                                         APPELLANTS

FRANCIS R. LONERGAN, M.D.

 

                                                   V.

 

MONICA SHEARER                                                                 APPELLEE

 

                                              ------------

 

            FROM THE 17TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








In these accelerated, interlocutory appeals,
Appellants Shannon Polone, P.A.‑C. and Francis R. Lonergan, M.D. appeal
the trial court=s orders denying their motions
to dismiss the health care liability claims of Appellee Monica Shearer.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(9)
(Vernon 2008).  In two issues, Polone
argues that Shearer failed to comply with civil practice and remedies code
section 74.351 because the medical expert reports that she filed are inadequate
and fail to show that the authoring experts are qualified to offer an expert
opinion regarding the standard of care applicable to a physician=s
assistant.  See id. ' 74.351(b),
(l) (Vernon Supp. 2008).  Dr.
Lonergan also argues that Shearer failed to file an adequate expert report in
compliance with civil practice and remedies code section 74.351, but he
contends in two issues that the opinions of the authoring experts are
speculative and conclusory and that the experts failed to adequately address
Shearer=s
specific claims.  See id.  We affirm in part and reverse and remand in
part.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND








Shearer filed a medical malpractice lawsuit
against Dr. Lonergan and Polone in January 2008.  She alleged that she experienced symptomatic
breast problems, including asymmetric breasts and breast pain, at the end of 2004.  In November 2005, Polone examined Shearer
after Shearer complained of breast pain and dimpling of the skin.  A mammogram and sonogram were performed, but
the results did not show a definable mass. 
The radiologist classified the findings as ABIRADS 2@ and
recommended a followup mammogram in one year.[1]  Shearer saw Dr. Lonergan through 2007, during
which time she allegedly continued to complain of Abreast
problems.@ 
Dr. Adrienne Martin evaluated Shearer in late 2007, and tissue excised
from Shearer=s left breast was diagnosed as
lobular carcinoma.  Shearer then
underwent a bilateral mastectomy.

Shearer alleged in her original petition that
Polone negligently failed Ato
closely follow up the findings after the mammogram in 2005@ and Ato
timely recognize the possibility of malignancy in [Shearer].@  Shearer alleged that Dr. Lonergan was
negligent in failing Ato closely follow up the
findings after the mammogram in 2005,@ Ato
perform a fine needle aspiration on the mass in question,@ Ato refer
[Shearer] to a surgeon for follow up,@ and Ato
timely recognize the possibility of malignancy in [Shearer].@








Shearer attached to her petition the medical
expert report of Mark D. Akin, M.D.  She
later filed a second expert report prepared by Gerald H. Sokol, M.D.  Both Polone and Dr. Lonergan filed objections
to the adequacy of the expert reports and moved to dismiss Shearer=s health
care liability claims.  The trial court
overruled the objections and denied the motions to dismiss.  This interlocutory appeal followed.[2]

                                     III.  STANDARD OF REVIEW

We review a trial court=s denial
of a motion to dismiss for an abuse of discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93
(Tex. 2006); Maris v. Hendricks, 262 S.W.3d 379, 383 (Tex. App.CFort
Worth 2008, pet. denied).  A trial court
abuses its discretion when it acts in an arbitrary or unreasonable manner or
without reference to any guiding rules and principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).  Merely because a
trial court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
Id.  But a trial court has
no discretion in determining what the law is or in applying the law to the
facts, and thus Aa clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of
discretion.@ 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).








                              IV.  CHALLENGES TO EXPERT REPORTS

Civil practice and remedies code section 74.351
provides that, within 120 days of filing suit, a plaintiff must serve expert
reports for each physician or health care provider against whom a liability
claim is asserted.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a).  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Id. ' 74.351(r)(6).  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report=s
adequacy.  See id. ' 74.351(a),
(b), (l).  A trial court must
grant a motion to dismiss based on the alleged inadequacy of an expert report
only if it finds, after a hearing, Athat the
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id. ' 74.351(l).








The information in the report does not have to
meet the same requirements as evidence offered in a summary judgment proceeding
or at trial, and the report need not marshal all the plaintiff=s proof,
but it must include the expert=s
opinions on each of the elements identified in the statuteCstandard
of care, breach, and causation.  See
Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 878B79 (Tex.
2001); Thomas v. Alford, 230 S.W.3d 853, 856 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).  In
detailing these elements, the report must provide enough information to fulfill
two purposes if it is to constitute a good-faith effort:  (1) the report must inform the defendant of
the specific conduct the plaintiff has called into question and (2) the report
must provide a basis for the trial court to conclude that the claims have
merit.  Palacios, 46 S.W.3d at
879; Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  A report
does not fulfill these two purposes if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios, 46 S.W.3d at 879.  A claimant is allowed to utilize separate
expert reports to satisfy any requirement of section 74.351.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(i).








In assessing the report=s
sufficiency, the trial court may not draw any inferences; it must rely
exclusively on the information contained within the report=s four
corners.  Bowie Mem=l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); Palacios, 46 S.W.3d at
878.  However, section 74.351 does not
prevent experts, as opposed to courts, from making inferences based on medical
history.  Benish v. Grottie, No.
02-08-00148-CV, 2009 WL 417264, at *6 (Tex. App.CFort
Worth Feb. 19, 2009, no pet. h.); see also Tex. R. Evid. 703 (providing
that an expert may draw inferences in a particular case); Tex. R. Evid. 705
(providing that an expert may testify in terms of opinions and inferences).

A.     Standard
of Care and Breach

In part of her first issue, Polone argues that
Dr. Akin=s and
Dr. Sokol=s reports are inadequate because
the reports fail to set forth the specific, applicable standard of care for a
physician=s assistant.  She argues that Dr. Akin=s report
sets forth one Auniversal@
standard of care for both physicians and physician=s
assistants but that it fails to state why this is appropriate.  She contends that Dr. Sokol=s report
also treats the standard of care for a physician=s
assistant and a physician as one and the same.








An expert report may not assert that multiple
defendants are all negligent for failing to meet the standard of care without
providing an explanation of how each defendant specifically breached the
standard and how that breach caused or contributed to the cause of injury.  Taylor v. Christus Spohn Health Sys. Corp.,
169 S.W.3d 241, 244 (Tex. App.CCorpus
Christi 2004, no pet.); see Wood v. Tice, 988 S.W.2d 829, 831 (Tex. App.CSan
Antonio 1999, pet. denied) (stating that the report must specifically refer to
the defendant and discuss how that defendant breached the applicable standard
of care).  Just as an expert report must
provide an explanation of how each defendant specifically breached the standard
of care, the expert report must set forth the applicable standard of care for
each defendant.  See Doades v. Syed,
94 S.W.3d 664, 671B72 (Tex. App.CSan Antonio
2002, no pet.) (holding expert report inadequate because it failed to set forth
the standard of care for each defendant individually and contained mere
conclusions regarding breach and causation); Rittmer v. Garza, 65 S.W.3d
718, 722B23 (Tex.
App.CHouston
[14th Dist.] 2001, no pet.) (reasoning that expert report was inadequate
because it lacked specificity as to the standards of care applicable to the
surgeries performed on plaintiff).

Dr. Akin=s report
identified the ASpecific Acts or Omissions of
Medical Care@ committed by Polone as (1)
failing to adequately evaluate and manage a breast mass and (2) failing to
recognize that mammography and breast sonography are not conclusive tests for
breast cancer.  Under the first act or
omission, Dr. Akin stated in relevant part as follows:

The standard of care for the evaluation of a
breast mass is to obtain a thorough history, perform an adequate breast exam,
and obtain appropriate diagnostic imaging procedures.  When this evaluation yields findings that
could be consistent with a breast cancer, either close follow-up or surgical
evaluation is mandatory.

Under the second act or omission, Dr. Akin stated as follows:








The standard of care for
interpretation of mammography and breast sonography is to recognize that these
tests are not conclusive, and that patient management cannot be based
exclusively upon these radiologic findings. 
PA Pa[l]one relied on the negative mammogram and sonogram findings as
evidence that Monica=s breast mass was not
cancer, even in spite of progressive growth of the breast mass and associated
skin changes.  In light of the
well-published evidence that not all breast cancers can be identified by these
radiologic procedures, this falls below the standard of care for the
interpretation of mammography and breast sonography.

 

Regarding Dr. Lonergan, Dr. Akin=s report
identified the ASpecific Acts or Omissions of
Medical Care@ committed by Dr. Lonergan as
the same two ASpecific Acts or Omissions of
Medical Care@ committed by Polone.  And as he did with Polone, under the first
act or omission, Dr. Akin stated in relevant part as follows:

The standard of care for
the evaluation of a breast mass is to obtain a thorough history, perform an
adequate breast exam, and obtain appropriate diagnostic imaging
procedures.  When this evaluation yields
findings that could be consistent with a breast cancer, either close follow-up
or surgical evaluation is mandatory.

 

And under the second act or omission, Dr. Akin stated as follows:

The standard of care for
interpretation of mammography and breast sonography is to recognize that these
tests are not conclusive, and that patient management cannot be based
exclusively upon these radiologic findings. 
Dr. Lonergan relied on the negative mammogram and sonogram findings as
evidence that Monica=s breast mass was not
cancer, even in spite of progressive growth of the breast mass and associated
skin changes.  In light of the
well-published evidence that not all breast cancers can be identified by these
radiologic procedures, this falls below the standard of care for the
interpretation of mammography and breast sonography.

 













Although Dr. Akin=s report
sets forth what he opines to be the applicable standards of care for both
Polone and Dr. Lonergan regarding evaluation of a breast mass and
interpretation of mammography and breast sonography, the standards of care that
he identified are identical.  Because the
report does not delineate between the standard of care applicable to a
physician=s assistant and the standard of
care applicable to a physician, the report sets forth but one standard of care
applicable to both Polone and Dr. Lonergan. 
And because only one standard of care is set forth, the report does notCas
Polone points outCexplain how or why it is the
responsibility of Polone and not Dr. Lonergan, the treating physician, to order
diagnostic tests or make a referral; at what point the duty to order additional
testing becomes the duty of the physician; or why or whether it is not always
the duty of the physician and not the physician=s
assistant to perform such tasks.  In
other words, the report does not specifically identify the particular standard
of care applicable to Polone.  Although the
standards of care might be the same for both Polone and Dr. Lonergan, the
report does not specifically state as much. 
Because the report does not articulate that the standards of care are
the same, the report required the trial court to impermissibly infer that
Polone and Dr. Lonergan shared identical standards of care applicable to
evaluation of a breast mass and interpretation of mammography and breast
sonography, which may or may not be correct, considering the information
contained only within the four corners of the report.  See Wright, 79 S.W.3d at 52 (stating
that trial court may not draw inferences regarding information contained in
expert report).

Dr. Sokol=s report
sets forth in a single paragraph what he opines to be the standard of care for
the diagnosis and treatment of women with suspected breast cancer, stating as
follows:

                                      STANDARD
OF CARE

As a result of my
background, training, and clinical experience in the treatment of women with
suspected breast cancer, I am familiar with the standards of care for the
diagnosis and treatment of such patients. 
The standard of care for a patient with a palpable mass and skin
dimpling is to perform a fine needle aspiration of the lump and to refer to a
breast surgeon.

 

Dr. Sokol=s report sets forth a single
standard of care for both Polone and Dr. Lonergan instead of identifying the
specific standard of care applicable to each. 
See Palacios, 46 S.W.3d at 880 (AWhether
a defendant breached his or her duty to a patient cannot be determined absent
specific information about what the defendant should have done differently.@); see
also Doades, 94 S.W.3d at 671B72.  Dr. Sokol=s report
is deficient even when considered with Dr. Akin=s
report.








We hold that the trial court abused its discretion
by denying Polone=s motion to dismiss on the
ground that Dr. Akin=s and Dr. Sokol=s expert
reports were deficient for failing to adequately set forth the applicable
standards of care.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(a),
(b), (l), (r)(6).  We sustain this
part of Polone=s first issue.

In another part of her first issue, Polone
contends that Dr. Akin=s report is inadequate regarding
the element of breach.  She specifically
argues that Dr. Akin=s report does not explain why
it is a breach of the standard of care for a physician=s
assistant to disregard the diagnostic tests performed (because, according to
Polone, the results indicated that the mass was benign).  Under the failure to adequately evaluate and
manage a breast mass ASpecific Act[] or Omission[] of
Medical Care,@ Dr. Akin elaborated on the
mandatory Aclose follow-up or surgical
evaluation@ standard of care and stated, AEven
though a diagnostic mammogram and sonogram were performed and reported as
BIRADS 2, appropriate management of a palpable breast mass with skin
dimpling would have included either fine needle aspiration of the mass or
referral to a breast surgeon.@
[Emphasis added.]  Thus, Dr. Akin
explains exactly why it is a breach of the standard of care for a physician=s
assistant to disregard diagnostic tests resulting in BIRADS 2:  because Aappropriate
management@ of a palpable breast mass with
skin dimpling calls for fine needle aspiration or referral to a breast
surgeon.  We overrule this part of Polone=s first
issue.








B.     Causation

In another part of her first issue, Polone argues
that Dr. Akin=s and Dr. Sokol=s
reports are deficient with regard to causation. 
She contends that the reports fail to set forth how her alleged breaches
of the standard of care resulted in a delay of the diagnosis and treatment of
Shearer=s breast
cancer, how the alleged delay caused more damages and injury than would have
occurred absent the alleged breaches of the standard of care, and how but for
the alleged breaches of the standard of care, Shearer would not have been
injured.  Dr. Lonergan argues in his
first issue that the reports are speculative and conclusory.

In fulfilling the dual purposes of the expert
report, the expert must explain the basis of his statements and link his
conclusions to the facts.  Wright,
79 S.W.3d at 52.  The report must not be
conclusory in its explanation of causation. 
Id. at 53; Palacios, 46 S.W.3d at 879.

Dr. Akin=s report
states in part as follows:

It is my professional
opinion that Monica Shearer=s breast cancer was present for at least 22
months prior to biopsy confirmation, and the delay in diagnosis was a direct
consequence of the following individuals failing to meet the standards of
medical care:

 

. . . .








It is my professional medical
opinion that the diagnosis of Monica=s breast cancer was delayed for 22 months.  During this time frame there is documented
evidence of progressive growth and development of her breast cancer.  Within reasonable medical probability,
Monica=s breast cancer would
have been timely diagnosed if PA Polone and Dr. Lonergan had met the standards
of care for the evaluation and management of a breast mass.  This failure to meet the standard of care
has increased Monica=s risk of metastatic breast cancer and subsequent
morbidity and mortality, and constitutes medical negligence.  [Emphasis added.] 

 

Dr. Sokol=s report states in
relevant part:

 

It is my opinion that,
more probably than not, the delay in diagnosis of the breast cancer resulted in
injury or damage to this patient.  It is
my opinion, to a degree of medical probability, that Ms. Shearer=s breast cancer could
have been treated, if timely diagnosed, without the necessity of mastectomies
and as likely her prognosis was worsen[ed] by delay of diagnosis as well. 

 








The record demonstrates that Shearer is suing
Polone and Dr. Lonergan for damages resulting from their alleged negligence in
failing to timely diagnose Shearer=s breast
cancer.  Dr. Akin addresses causation in
his report when he opines that there has been an increase in Shearer=s (1)
risk of metastatic breast cancer and (2) subsequent morbidity and mortality as
a result of Polone and Dr. Lonergan=s
alleged failure to meet the applicable standards of care.  Stated otherwise, but for Polone and Dr.
Lonergan=s
failure to meet the accepted standards of care regarding evaluation and
management of a breast mass and interpretation of mammography and breast sonography,
Shearer would not have experienced an increase in the risk of metastatic breast
cancer and morbidity and mortality. 
According to the plain language of the report, Dr. Akin does not opine
that Shearer would not have a risk of metastatic cancer, morbidity, and
mortality in the absence of Polone=s and
Dr. Lonergan=s breaches of the standard of
care; he only opines that their failure to meet the standards of care increased
those risks.  This is not a
conclusory opinion.  Cf. Wright,
79 S.W.3d at 53 (reasoning that expert report was conclusory when it stated
that the plaintiff might have had Athe
possibility of a better outcome@ without
explaining how defendant=s conduct caused injury to
plaintiff).

Dr. Sokol similarly contends that if timely
diagnosed, Shearer=s breast cancer could have been
treated without the necessity of mastectomies. 
In other words, but for Polone and Dr. Lonergan=s
failure to meet the accepted standards of care for a patient with a palpable
mass and skin dimpling, Shearer would not have had to undergo treatment for her
condition through implementation of mastectomies.








Dr. Akin=s report
and Dr. Sokol=s report thus show a causal
connection between the complained-of negligent acts or omissions and the
resulting injury: but for Polone and Dr. Lonergan=s
negligent acts or omissions involving the failure to timely diagnose Shearer=s breast
cancer, Shearer would not have incurred the alleged injuries of an increased
risk of metastatic breast cancer, morbidity, and mortality and treatment of her
cancer by way of mastectomies.  The
reports accordingly inform Polone and Dr. Lonergan of the specific conduct that
Shearer has called into question and provide a basis for the trial court to
conclude that the claims have merit.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6);
Palacios, 46 S.W.3d at 879.  This
is all that is required; the information in the report does not have to meet
the same requirements as evidence offered in a summary judgment proceeding or
at trial.  See Palacios, 46 S.W.3d
at 878B79.  Consequently, in the context of examining
causation, the reports are sufficient to represent an objective good-faith
effort to comply with the definition of an expert report in civil practice and
remedies code section 74.351(r)(6).  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l),
(r)(6).[3]  We hold that the trial court did not abuse
its discretion by denying Polone=s and
Dr. Lonergan=s motions to dismiss on this
ground.  We overrule this part of Polone=s first
issue and Dr. Lonergan=s first issue.

C.     Qualifications

In her second issue, Polone argues that Dr. Akin=s and
Dr. Sokol=s reports Afail to
show that they are qualified to testify regarding the standard of care
applicable to a physician=s assistant.@








An expert providing opinion testimony regarding
whether a health care provider departed from the accepted standards of health
care must satisfy the requirements set forth in section 74.402.  Id. ' 74.351(r)(5)(B).  Section 74.402 provides in part as follows:

(b) In a suit involving a
health care liability claim against a health care provider, a person may
qualify as an expert witness on the issue of whether the health care provider
departed from accepted standards of care only if the person:

 

(1) is practicing health care in a field of practice that involves the
same type of care or treatment as that delivered by the defendant health care
provider, if the defendant health care provider is an individual, at the time
the testimony is given or was practicing that type of health care at the time
the claim arose;

 

(2) has knowledge of accepted standards of care for health care
providers for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and

 

(3) is qualified on the basis of training or experience to offer an
expert opinion regarding those accepted standards of health care.

 








Id. ' 74.402(b)
(Vernon 2005).  In determining whether a
witness is qualified on the basis of training or experience, the court shall
consider whether, at the time the claim arose or at the time the testimony is
given, the witness (1) is certified by a licensing agency of one or more states
of the United States or a national professional certifying agency, or has other
substantial training or experience, in the area of health care relevant to the
claim; and (2) is actively practicing health care in rendering health care
services relevant to the claim.  Id.
' 74.402(c)(1)B(2).  Our analysis of the qualifications of an
expert under section 74.351 is limited to the four corners of the expert=s report
and curriculum vitae.  Mem=l
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 758 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).

Dr. Akin=s report
and curriculum vitae demonstrate that he has been a licensed physician in the
State of Texas since 1979, that he is board certified by the American College
of Obstetricians and Gynecologists, and that he has been in private practice since
1983.  Dr. Akin was trained in breast
evaluation during a four-year residency at Parkland Hospital in Dallas, Texas,
and he has twenty-four years of Aoffice
practice experience@ in Austin, Texas, where he has Aperformed
breast examinations on a regular daily basis.@  He states the following:

I am qualified to render
an opinion on the physician and nurse practitioner care provided in this case
because I am an expert in the diagnosis of breast disease.  I have examined thousands of women
with fibrocystic breast disease and hundred[s] of women with breast
cancer.  This includes the routine
practice of obtaining a history of the patient=s breast complaints and
performing a thorough physical examination, and when necessary ordering
mammography, sonography, and/or fine needle aspiration.  Moreover, as a primary care physician, I am
responsible for assessing all of the above information and determining which
patients should be referred for further surgical evaluation and treatment.  My 24 years of clinical experience make me
intimately familiar with the accepted standards of care as applies to all
aspects of this case. [Emphasis added.]

 








Dr. Sokol=s report
and curriculum vitae demonstrate that he is licensed in Florida and Washington,
D.C., and that he is board certified by the American Boards of Internal
Medicine, Radiology, Internal Medicine Sub-specialty Oncology, Clinical
Pharmacology, and Quality Assurance.  He
states the following:

I am qualified to attest
to standards of medical treatment for the diagnosis and treatment of a patient
presenting as Ms. Shearer did.  I am
qualified to do so by virtue of the fact that I am a licensed physician
practicing in the State of Florida, specializing in Oncologic Medicine.  In my clinical practice, I have examined
and treated hundreds of patients with the presenting signs and symptoms similar
to those that Ms. Shearer presented with at the office of Dr. Lonergan in
the approximate two year period prior to her breast surgery.  I have also supervised the oncological
treatment of women with carcinoma such as that diagnosed in this patient,
and as a result of my training and experience in such treatment, I am familiar
with the effects of early diagnosis and treatment of patients with these
problems, and the effects of late diagnosis and treatment of such
patients.  I have treated many
patients with lesions such as Ms. Shearer which were diagnosed in a timely
manner, and I have been involved in the care of many such patients who did not
receive the benefit of timely diagnosis and treatment.  [Emphasis added.]

 








Polone does not specifically challenge any
section 74.402(b) requirement.  Cf.
Burrell, 230 S.W.3d at 759B62
(addressing each of appellant=s
specific section 74.402 challenges).  She
contends that Dr. Akin=s report and Dr. Sokol=s report
fail to state whether they are qualified to testify regarding the standard of
care for a physician=s assistant.  This determination, however, is made by
considering the information contained within Dr. Akin=s and
Dr. Sokol=s reports and curricula vitae in
light of the qualification requisites in civil practice and remedies code
section 74.402(b) and (c).  See id.
at 758.  Polone also argues that neither
Dr. Akin nor Dr. Sokol is qualified because their reports do not state whether
the standards of care described in the reports apply to a physician, a
physician=s assistant, or both.  This is not an issue relevant to whether Dr.
Akin and Dr. Sokol are qualified to offer an expert opinion in this
case; it is an issue appropriately addressed when considering the adequacy of
the reports regarding standards of care, which we have already addressed above.

We hold that the trial court did not abuse its
discretion by denying Polone=s motion
to dismiss the expert reports of Dr. Akin and Dr. Sokol on the grounds that
they are not qualified to offer an expert opinion in this case.  We overrule Polone=s second
issue.

D.     Specificity








In his second issue, Dr. Lonergan argues that
neither Dr. Akin=s report nor Dr. Sokol=s report
represents a good-faith effort to comply with the definition of an expert
report because the claims alleged in Shearer=s
petition (failing to closely follow up the findings after the mammogram in
2005, failing to perform a fine needle aspiration on the mass in question,
failing to refer Shearer to a surgeon for followup, and failing to timely
recognize the possibility of malignancy in Shearer) do not match the claims
addressed in the reports.  We have
thoroughly reviewed Shearer=s
original petition and the reports of Dr. Akin and Dr. Sokol.  In the context of whether the theories of
negligence match the claims addressed in the reports, with the exception of the
standard of care issue addressed in part of Polone=s first
issue, the reports of Dr. Akin and Dr. Sokol considered together represent an
objective good-faith effort to comply with the definition of an expert report
in section 74.351(r)(6).  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(i),
(l).  We overrule Dr. Lonergan=s second
issue.

                                     V.  REMAND OR DISMISS?








Polone contends that Shearer is not entitled to a
remand of the case if this court determines that the expert reports are
deficient.  We disagree.  Civil practice and remedies code section
74.351(c) allows the trial court to grant one thirty-day extension to the
claimant in order to give the claimant an opportunity to cure a report found to
be deficient.  Id. ' 74.351(c).  Here, it is this court, not the trial court,
that has sustained part of Polone=s motion
to dismiss challenging the adequacy of Dr. Akin=s and
Dr. Sokol=s reports.  Section 74.351(c) is not rendered meaningless
simply because this court, instead of the trial court, determines that an
expert report is deficient.  See
Leland v. Brandal, 257 S.W.3d 204, 205, 207B08 (Tex.
2008) (AIn this
health care liability claim, we must decide whether a plaintiff may be afforded
a thirty-day extension to cure an expert report after a trial court=s ruling
that the report is adequate is reversed on appeal.  We hold that when elements of a timely filed
expert report are found deficient, either by the trial court or on appeal, one
thirty-day extension to cure the report may be granted.@)
(citation omitted); see also Miranda v. Martinez, No. 13-06-00386-CV,
2007 WL 687001, at *3B4 (Tex. App.CCorpus
Christi Mar. 8, 2007, pet. denied) (mem. op.). 
The record does not demonstrate that the trial court has already granted
Shearer a section 74.351(c) extension. 
Accordingly, remand is appropriate for the trial court to make its civil
practice and remedies code section 74.351(b)Cwhich is
subject to section 74.351(c)Cdetermination.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(b),
(c).

                                          VI.  CONCLUSION

We affirm the trial court=s order
denying Dr. Lonergan=s motion to dismiss.  Having sustained part of Polone=s first
issue, we reverse the trial court=s order
denying Polone=s motion to dismiss and remand
the case to the trial court to determine whether to dismiss Shearer=s claim
against Polone or to 








grant Shearer a section 74.351(c) thirty-day extension to cure the
deficiency.  See id.

 

WILLIAM
BRIGHAM

JUSTICE

 

PANEL:  LIVINGSTON and MCCOY, JJ.; and WILLIAM
BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  April 2, 2009











[1]According to Polone, the
results of the diagnostic tests indicated that the mass was benign.





[2]See Lewis v. Funderburk, 253 S.W.3d 204, 208
(Tex. 2008) (authorizing appeal from trial court order determining that expert
report was adequate and denying motion to dismiss).





[3]Dr. Lonergan additionally
makes some type of comparative responsibility argument.  It is unpersuasive.  See Tex. R. App. P. 38.1(h).